**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

TIMOTHY PATRICK MURPHY,

    Plaintiffs,

v.                                                                                              Case No. 21-10897

VIAD CORPORATION,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING CASE TO THE CENTRAL DISTRICT OF DISTRICT OF CALIFORNIA**

Plaintiff Timothy Murphy, a Michigan resident, brings this diversity action against Defendant Viad Corporation for damages arising from his diagnosis of asbestosis. (ECF No. 8.) Plaintiff alleges that, during his service in the United States Navy, he was regularly exposed to asbestos contained in large machinery. (*Id.*) He maintains that Defendant is liable as a successor-in-interest to the companies who manufactured and distributed this machinery, and he brings claims for negligence, strict liability, and intentional and negligent misrepresentation. (*Id.*, PageID.99–124.)

Before the court is Defendant's "Motion to Dismiss for Lack of Personal Jurisdiction" under Federal Rule of Civil Procedure 12(b)(2). (ECF No. 12.) At the joint request of the parties, for purposes of this motion, the court will assume Defendant could be liable as a successor-in-interest and will address only whether personal jurisdiction exists due to the activities of Defendant's predecessors. (*See id.*, PageID.252–53.)

1

## I. BACKGROUND

Plaintiff enlisted in the United States Navy in 1964. (ECF No. 8, PageID.94.) One year later, he was assigned to work aboard the *USS Frank E. Evans* ("*Evans*"), which was moored in Long Beach, California, at the Long Beach Naval Shipyard. (*Id.;* ECF No. 14, PageID.383–84.) Plaintiff served as a machinist's mate aboard the *Evans*, where he operated, maintained, and repaired two freshwater distilling plants, which produced freshwater from seawater. (ECF No. 8, PageID.94–95.) These distilling plants were installed on the *Evans* in approximately 1944, before Plaintiff began his military service. (*Id.*, PageID.92.) In the course of his duties between approximately August 13, 1965, and December 11, 1968, Plaintiff frequently removed and replaced various parts on these distilling plants. (*Id.*, PageID.95–97.) The distilling plants' parts contained a significant amount of asbestos, and his repairs often "created . . . visible clouds of asbestos dust," which Plaintiff often inhaled. (*Id.*, PageID.97–98.)

In 2017, Plaintiff began suffering from shortness of breath, coughing, fatigue, and an upper respiratory infection. (*Id.*, PageID.98.) On March 20, 2018, he was diagnosed with asbestosis "caused by his exposure to and inhalation of excessive, hazardous concentrations of respirable asbestos fibers solely during his military service." (*Id.*, PageID.98–99.)

The distilling plants that gave rise to Plaintiff's condition were manufactured, distributed, and sold by an Ohio company called Griscom-Russell; according to Plaintiff, due to a series of transactions and corporate acquisitions, Defendant is a successor-in-interest of Griscom-Russell. (*Id.*, PageID.90–91.) Plaintiff alleges that, as such, Defendant is subject to personal jurisdiction in Michigan due to Griscom-Russell's

business activities it conducted in Michigan between 1912 and 1962. (*Id.*, PageID.89–90.) Particularly, Griscom-Russell sold some of its heat exchanger products—which also contained asbestos—in Michigan, and it was also involved as a contractor for the Enrico Fermi Atomic Power Plant in Monroe, Michigan. (*Id.*, PageID.90; ECF No. 14, PageID.376.)

Defendant argues in its motion to dismiss that the court cannot exercise personal jurisdiction over Defendant because doing so would violate the Due Process Clause. (ECF No. 12.) Plaintiff filed a response, and Defendant replied. (ECF Nos. 14, 15.) Having reviewed the parties' briefs, the court finds a hearing to be unnecessary. E.D. Mich. LR 7.1(f)(2).

## II. STANDARD

After a complaint is filed, a defendant may move to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012).

The "constitutional touchstone" of due process is whether the defendant has purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Constitutionally, "[p]ersonal jurisdiction may be either 'general' or 'specific.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird v. Parson*, 289 F.3d 865, 873 (6th Cir. 2002)). General jurisdiction occurs where "a defendant's contacts with the forum state are of such continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.*; *see also*

*Miller*, 694 F.3d at 679–80. Specific jurisdiction arises "where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp.*, 428 F.3d at 615 (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)).

The Sixth Circuit has established a three-prong test for determining specific jurisdiction:

> First, defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *S. Mach. Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016).

The plaintiff bears the burden of proving personal jurisdiction. *Intera Corp.*, 428 F.3d at 615. "The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue." *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The court has discretion to hold a hearing or order additional discovery. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020). "When the district court 'rules on written submissions alone' the burden consists of 'a *prima facie* showing that personal jurisdiction exists.'" *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras*, 875 F.2d at 1214). A *prima facie* showing of jurisdiction can be met by establishing, "with reasonable particularity, sufficient contacts between [the defendant] and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Malone*, 965 F.3d at 504. A plaintiff may meet this burden merely

4

through its complaint. *Id.* By contrast, when the court chooses to conduct a pretrial evidentiary hearing, a plaintiff's burden is higher—it must prove personal jurisdiction over the defendant by a preponderance of the evidence. *Schneider*, 669 F.3d at 697.

As noted above, the court will rule on the motion without a hearing. In doing so, "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991)).

### III. DISCUSSION

Plaintiff argues that through Defendant's predecessors-in-interest—particularly Griscom-Russell—the court may properly exercise personal jurisdiction over Defendant. Plaintiff does not allege the court has personal jurisdiction over Defendant via general jurisdiction; he alleges only specific jurisdiction. (ECF No. 8, PageID.89–90; ECF No. 14.) Plaintiff can demonstrate specific jurisdiction over Defendant only if Plaintiff satisfies both Michigan's long-arm statute and constitutional due process. *See Miller*, 694 F.3d at 679

### A. Specific Jurisdiction

Michigan's long-arm statute provides limited personal jurisdiction over nonresident corporations for claims "arising out of the act or acts which create any of the following relationships," including "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort," or more broadly, where a defendant has transacted "any business within the state." Mich. Comp. Laws §

5

600.715. Plaintiff maintains Michigan's long-arm statute is satisfied because, at a minimum, Plaintiff has suffered consequences (asbestosis) in Michigan from an allegedly tortious act. (ECF No. 14, PageID.366–67, 379.) Additionally, Defendant's predecessors transacted business within the state because they supplied "major items of equipment or services" for an atomic power plant in Michigan. (ECF No. 14, PageID.366, 376.) Plaintiff likely establishes that the statute's requirements are met, as Michigan has interpreted the statute to cover a broad range of claims. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504–05 (6th Cir. 2014) (noting the use of the word "any" by the Michigan Legislature, "to define the amount of business that must be transacted[,] establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction"). Thus, assuming Defendant is a successor in interest to Griscom-Russell, the requirements of Michigan's long-arm statute appear to have been satisfied.

However, the principal argument of Defendant's motion has little to do with Michigan's long-arm statute. Defendant's focus is that subjecting it to personal jurisdiction here would contravene the Due Process Clause's constitutional minimum contacts requirement as articulated in the Sixth Circuit's three-prong test for specific jurisdiction. *See Intera Corp.*, 428 F.3d at 615. This presents a closer question in the present case.

"Although Michigan's long-arm statute authorizes personal jurisdiction over [Defendant], a court in Michigan cannot exercise its personal jurisdiction in violation of [Defendant]'s constitutional right to due process." *Beydoun*, 768 F.3d at 504–05 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)).

6

This requirement ensures that jurisdiction comports with "'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, as noted above, specific jurisdiction is established if (1) Defendant purposefully availed himself to Michigan; (2) Defendant's activities in Michigan proximately caused Plaintiff's injuries; and (3) there is a substantial connection between Defendant and Michigan such that exercise of personal jurisdiction is reasonable. *See Malone* 965 F.3d at 503; *S. Mach. Co.*, 401 F.2d at 381.

### 1. Purposeful Availment

Proving the first element, purposeful availment, is "the *sine quo non* for *in personam* jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *S. Mach. Co.*, 401 F.2d at 381–82). Purposeful availment asks "whether [the defendant] acted or caused a consequence in [the forum state] such that he invoked the benefits and protections of [the forum state's] law." *MAG IAS Holdings v. Schmückle*, 854 F.3d 894, 900 (6th Cir. 2017). This requirement "ensures that [the defendant] could have 'reasonably anticipated being haled into court there,'" and ensures defendants are not brought into a court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989)); *Burger King*, 471 U.S. at 475. "[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within the State,' or by creating 'continuing obligations' to residents in that state." *Id.* (quoting *Burger King*, 471 U.S. at 475–76).

7

At its heart, Plaintiff's argument for establishing purposeful availment is that Griscom-Russell, Defendant's predecessor, "manufactured and distributed a heat exchanger product line between 1912 and 1962, and placed hundreds of thousands of units from that product line in the stream of interstate commerce." (ECF No. 8, PageID.89–90.) He further alleges in his complaint that Griscom-Russell:

> (a) transacted voluminous business in the State of Michigan for about fifty (50) years;
> (b) purposefully availed itself of the privilege of acting in Michigan for about fifty (50) years;
> (c) placed in the stream of interstate commerce its products, including its heat exchanger product line, which contained and integrated [asbestos-containing materials], specifically targeting Michigan business consumers;
> (d) advertised its products, including its heat exchanger product line, which contained and integrated [asbestos-containing materials], extensively in Michigan;
> (e) established advice and support networks for Michigan customers; and
> (f) marketed its products, including its heat exchanger product line which contained and integrated [asbestos-containing materials], through distributors agreeing to serve as its sales agents in Michigan.

(*Id.*, PageID.90.)

More specifically, Plaintiff explains that "in selling its product line of fungible heat exchangers, [Griscom-Russell] directly served a market for those products in Michigan." (ECF No. 14, PageID.378.) He alleges Griscom-Russell "marketed and sold its fungible heat exchanger product line in Michigan and encouraged local businesses to purchase heat exchangers." (*Id.*)

Plaintiff's complaint and supporting documents, although lacking in specificity, arguably establish that Defendant, through Griscom-Russell, purposefully availed itself of the privileges of Michigan through its transactions in the state. *See Malone* 965 F.3d at 504–05 (finding a complaint sufficiently showed the defendant purposefully availed itself to a forum state despite the complaint being "sparse on detail"). But purposeful

8

availment is far from the end of the inquiry. As the Sixth Circuit recently acknowledged, "the first and second prongs are related," and the test requires the court to link "*how* [Defendant] purposely availed itself of [Michigan's] markets" with Plaintiff's injuries. *Id.* at 503 (emphasis in original).

### 2. "Arises out of" or "Relates to"

The "arising from" prong, according to the Sixth Circuit, "requires that [Defendant's] contacts be 'related to the operative facts of the controversy.'" *MAG IAS Holdings*, 854 F.3d at 903. The Due Process Clause requires "an affiliation between the forum and underlying controversy, principally, [an] activity or occurrence that takes place in the forum State," and therefore confines a court to adjudicating "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). In other words, there must be a relationship between "the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014), meaning the claims must "arise out of or relate to the defendant's contacts" in the state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021) (quoting *Bristol-Myers*, 137 S. Ct. at 1025). When there is no connection between the defendant, forum, and the specific claims at issue, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781.

The Sixth Circuit has noted this prong has a "lenient" standard. *Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quotation omitted). *See also MAG IAS Holdings*, 854 F.3d at 903 ("We have said this is a "lenient standard," requiring only that the cause of action have a "substantial connection" to the defendant's activity in the state.") (quotation omitted). This standard is met "when 'the operative facts are at least

9

marginally related to the alleged contacts' between the defendant and the forum." *Lyngaas*, 992 F.3d at 423 (quoting *Bird*, 289 F.3d at 873). As more fully explained below, the court finds that Plaintiff has failed to demonstrate even a marginal relation between and among the operative facts, Defendant, and Michigan.

To support his argument that a sufficient connection exists, Plaintiff asserts in his complaint that Griscom-Russell maintained a heat exchanger product line that it placed into the stream of interstate commerce and also targeted Michigan business consumers. (ECF No. 8, PageID.90.) His main contention is that because Griscom-Russell produced one product that contained asbestos for use on a naval ship (the freshwater distilling plants that caused his injuries) and designed another product that contained asbestos for use in Michigan at an atomic power plant (a steam generator), there is a sufficient relationship between his injuries, Defendant, and Michigan. (ECF No. 14, PageID.379.) Thus, while Plaintiff admits that "the specific products [Griscom-Russell] manufactured and sold and to which [Plaintiff] was exposed were not sold in Michigan," he notes *other* Griscom-Russell's products were. (*Id.*, PageID.380.)

In support of his contention that this "relationship" provides a basis for specific jurisdiction, Plaintiff relies heavily on the newly decided *Ford Motor Company* case. 141 S. Ct. at 1026. The Supreme Court succinctly summarized *Ford*:

> In each of these two cases, a state court held that it had jurisdiction over Ford Motor Company in a products-liability suit stemming from a car accident. The accident happened in the State where suit was brought. The victim was one of the State's residents. And Ford did substantial business in the State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective. Still, Ford contends that jurisdiction is improper because the particular car involved in the crash was not first sold in the forum State, nor was it designed or manufactured there. We reject that argument. When a company like Ford serves a

10

> market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.

*Id.* at 1022. In finding personal jurisdiction in *Ford*, the Court explained that a "strong relationship among the defendant, the forum, and the litigation" existed because "Ford had systematically served a market in [the forum states] *for the very vehicles* that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 1028. (emphasis added). The fact that "Ford had advertised, sold, and *serviced those two car models in [the forum states]*" was crucial; significantly, it noted, "[c]ontrast a case, which we do not address, in which Ford marketed the models in *only* a different State or region." *Id.* (emphasis added). In cases where a defendant is "regularly marketing a [product] in a State," a defendant has "clear notice" it will be subject to the jurisdiction of that state. *Id.* at 1030.

Plaintiff explains that *Ford* demands a finding of personal jurisdiction because, "in *Ford Motor Co* terms, it is not the same model of [Griscom-Russell's] car that ran [Plaintiff] over, but it was still a [Griscom-Russell] car and it still ran him over here in Michigan." (ECF No. 14, PageID.380.) But the Court's holding in *Ford* does not confer personal jurisdiction over defendants as broadly as Plaintiff appears to believe. The Court was careful to warn that where a plaintiff alleges a defendant's activities "relate to" a plaintiff's claims, it "does not mean anything goes." *Id.* at 1026. A defendant must still be able to "reasonably anticipate being haled into" the forum state "to defend actions 'based on' products causing injury there." *Id.* at 1027. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

In this case, even viewing the facts in a light most favorable to him, Plaintiff has not established a marginal relation between Griscom-Russell's activities in Michigan

11

and the products that injured Plaintiff across the continent. The freshwater distilling plants that are alleged to be defective, the very things that caused Plaintiff's injuries, had absolutely no connection to Michigan. Plaintiff does not allege any of these distilling plants had ever been marketed in Michigan or ever crossed Michigan's borders. Indeed, Plaintiff concedes that they were never sold or marketed in Michigan. (*Id.*, PageID.380.) While Griscom-Russell may have in some way purposefully availed itself of conducting some business in Michigan, there is no chance Griscom-Russell—and Defendant as its successor—could reasonably anticipate being haled into a Michigan court for claims like Plaintiff's. How could they expect that Griscom-Russell's *saltwater evaporators* would eventually cause them to be summoned to litigate in a state that is surrounded by Earth's largest system of freshwater lakes, salt-free since c. 14,000 b.c.e.? They could not.

Plaintiff's attempt to analogize this case to *Ford* therefore fails. In *Ford*, the Court noted that the *models of the vehicles* at issue had been aggressively marketed in the forum state, and *those very models of vehicles* harmed the plaintiffs inside the forum state. *See Ford Motor Co.*, 141 S. Ct. at 1028. Here, by contrast, Plaintiff is not alleging his injuries are related to any of Griscom-Russell's steam generators or heat exchangers that were in Michigan.[1] Instead, Plaintiff alleges that he was harmed during

---

[1] In this regard, Plaintiff's briefly attempts to connect Michigan with his claims by describing all of Griscom-Russell's products as "apparently fungible" heat exchangers. This off-hand assertion contradicts his previous admission that the products in Michigan and aboard the *Evans* were *not the same.* (ECF No. 14, PageID.380 ("[T]he specific products [Griscom-Russell] manufactured and sold and to which [Defendant] was exposed *were not sold in Michigan*." (emphasis added).) Additionally, the evidence he uses to support the claim that the products on the *Evans* and the products in Michigan were "fungible," do not support his contention, as the documents he cites apparently show only that Griscom-Russell was involved as contractor designing steam generators,

12

his time in California and on the *Evans* as he worked near two freshwater distilling plants. (ECF No. 8, PageID.92.)

Plaintiff's last-ditch effort to establish personal jurisdiction is an allegation that, because both the products on the *Evans* and the products in Michigan carried asbestos in its parts, a sufficient connection with the forum state exists.[2] (ECF No. 14, PageID.381.) But this does not rise to even a "marginal relation" between Michigan and the operative facts of this case. Establishing a *prima facie* showing requires Plaintiff to allege "with reasonable particularity, sufficient contacts between [the defendant] and the forum state to satisfy . . . the Due Process Clause." *Malone*, 965 F.3d at 504. That two distinct products both contained asbestos has no bearing on the propriety of Michigan exercising personal jurisdiction over Defendant. Devoid of reasonable particularity, such a contention simply does not establish any relationship between the operative facts and what Griscom-Russell marketed or distributed in Michigan.

In summary, while the operative facts need only be marginally related to the defendant's contacts and Michigan, Plaintiff has failed to meet this burden. The main issues in this case derive from Defendant contracting asbestosis from his time exposed

---

particularly for use in a Michigan atomic power plant. (ECF No. 14-5, PageID.441–65; ECF No. 14-6, PageID.466–70.)

[2] Considering Plaintiff's admission that the products that caused him harm and the products used in Michigan were different (ECF No. 14, PageID.380), and also recognizing the distinct nature of these two products, the court finds that allowing further discovery or holding an evidentiary hearing on this issue would not be fruitful. *See Malone*, 965 F.3d at 506 (noting that the plaintiff's inability to produce evidence suggested the court should hold an evidentiary hearing or additional discovery on the issue of personal jurisdiction). In fact, Plaintiff's response spent considerable time explaining that the court should *not* hold a hearing since Defendant did not request one. (*See, e.g.*, ECF No. 14, PageID.370 ("It bears repeating that [Defendant] has not requested an evidentiary hearing.").)

to two freshwater distilling plants on the *Evans*. (ECF No. 8, PageID.92–93.) At that time, Defendant was stationed at the United States Naval Station in Long Beach, California. (ECF No. 14, PageID.383.) That Plaintiff moved to Michigan after his exposure to the distilling plants and suffers from asbestosis in this state is insufficient. *See, e.g., Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Plaintiff cannot establish a connection between his claims and Michigan by linking the saltwater evaporators stationed on the *Evans* with land-based steam generators that were used in an atomic power plant in Michigan. To exercise personal jurisdiction over Defendant on this basis would require Defendant to appear in Michigan solely as a result of completely unrelated contracts, which the Due Process Clause prohibits. *See MAG IAS Holdings*, 854 F.3d at 900. In such circumstances, the Supreme Court has made clear "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *accord Ford Motor Co.*, 141 S. Ct. at 1026, 1031.

### 3. Reasonableness

The court's conclusion under the second prong sheds light on the third, which analyzes the reasonableness of exercising personal jurisdiction. In determining whether personal jurisdiction would be reasonable, courts consider three factors: "[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief." *Beydoun*, 768 F.3d at 508 (quoting *Asahi Metal Indus. Co. v. Super. Court of Cal.*, 480 U.S. 102, 113 (1987)). Absent any connection between Plaintiff's claims and Michigan, exercising personal jurisdiction would be unreasonable.

First, as to whether exercising personal jurisdiction would burden Defendant, Plaintiff alleges only that Defendant "has owned property" in Michigan and previously was a much larger corporation with some business in Michigan. (ECF No. 14, PageID.382.) There is no allegation, however, that as a Delaware corporation with its principal place of business in Arizona, it *currently* has any connection with Michigan. (ECF No. 14-8, PageID.479–82.) To be sure, no single factor is dispositive, and while acknowledging the Sixth Circuit has upheld specific jurisdiction even where the defendant is forced to travel to a forum state,[3] this factor weighs against establishing personal jurisdiction given that Griscom-Russell's business in Michigan had nothing to do with Plaintiff's claims.

Second, while Michigan undoubtedly has an interest in protecting the legal rights of its citizens, *Youn v. Tack, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003), the state's interests are diminished because there is no affiliation between these claims and Michigan. *See, e.g.*, *Service First Logistics, Inc. v. A-One Pallet, Inc.*, No. 2:19-CV-12616-TGB, 2020 WL 4366063, at *6. Plaintiff only recently discovered he suffers from asbestosis, and it coincidentally was in Michigan—all other facets of the "underlying controversy," however, relate to his time on the *Evans* and in California. *Bristol-Myers*, 137 S. Ct. at 1780.

Finally, the court acknowledges the strong interest Plaintiff has in obtaining relief. Plaintiff, as a veteran of the United States Navy, was essentially poisoned during his service in the 1960s and later diagnosed with asbestosis in 2018. He is currently

---

[3] *See, e.g.*, *Lanier v. American Board of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988).

disabled. (*Id.* Page ID.89.) He was prescribed "supplemental oxygen therapy" in 2019. (*Id*.) While his injuries are serious, it is nonetheless necessary that he litigates his claims in the proper jurisdiction so as to not offend traditional notions of fair play and justice. Considering all circumstances present in this case, the exercise of personal jurisdiction is unreasonable. Yet, the facial validity of his claims guides the court in its decision to not dismiss his case but rather transfer it to the Central District of California, as explained below.

### B. Transfer of the Action

In light of the court's conclusion that it lacks personal jurisdiction over Defendant, the court must determine whether to transfer this case to the appropriate venue or to dismiss it. *See* 28 U.S.C. §§ 1406(a), 1631. In cases where personal jurisdiction over the defendant is absent, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; *see also Roman v. Ashcroft*, 340 F.3d 314, 328–29 (6th Cir. 2003). A transfer is also permitted pursuant to 28 U.S.C. § 1406(a),[4] which allows a transfer even when the plaintiff files suit in an improper venue and in a court that lacks jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").

---

[4] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

16

The decision whether to transfer "in the interest of justice" or to dismiss the case rests within the discretion of the trial court. *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F.Supp.2d 1014, 1017 (E.D. Mich. 2002) (citing 28 U.S.C. § 1406). A transfer is favored over a dismissal because a transfer facilitates the adjudication of a dispute on the merits. *Goldlawr*, 369 U.S. at 466–67. "Unless evidence exists that the case was brought in the improper venue in bad faith or to harass the defendant, the interest of justice generally requires a transfer rather than a dismissal." *See, e.g.*, *Twin Flames Universe.com, Inc. v. Cole*, No. 20-11660, 2021 WL 1105247, at *8 (quoting *De La Fuente v. ICC*, 451 F.Supp. 867, 872 (N.D.Ill.1978)).

Here, Plaintiff has requested a transfer of venue as an alternative to dismissal. There is no evidence that Plaintiff filed this action in Michigan to harass Defendant.[5] While Defendant argues that this case should be dismissed rather than transferred due to Plaintiff's "lack of diligence," Plaintiff is still entitled to his day in court where his injuries are legitimate. Because (1) the *Evans* was moored in Long Beach, California, (2) Plaintiff ostensibly alleges Defendant's predecessors purposefully availed themselves of California through its transactions with the United States Navy, and (3) the products at issue harmed Plaintiff while he was aboard the *Evans* or in California, the court finds that transfer to the Central District of California[6] would be both appropriate and in the interests of justice. (ECF No. 14, PageID.383–85.)

---

[5] The court recognizes that Plaintiff previously sued Defendant in federal court in Illinois. The parties, however, stipulated to that dismissal, and there is no clear evidence of bad faith by filing a second action in Michigan.

[6] Plaintiff requested transfer to the Southern District of California; however, Long Beach is located in the state's Central District.

## V.  CONCLUSION

For the reasons explained above, Plaintiff has not met his burden of establishing personal jurisdiction over Defendant through Defendant's predecessors. However, the court deems outright dismissal of the action inappropriate. The court finds transfer of the case to the Central District of California necessary to serve the interests of justice. Accordingly,

IT IS ORDERED that Defendant's "Motion to Dismiss for Lack of Personal Jurisdiction" (ECF No. 12) is GRANTED IN PART. It is GRANTED in that the court finds that it lacks personal jurisdiction, but the court declines to grant the requested relief of dismissal. Instead,

IT IS ORDERED that the case is TRANSFERRED to the Central District of California, Southern Division.

      s/Robert H. Cleland      /
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  October 1, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 1, 2021, by electronic and/or ordinary mail.

      s/Lisa Wagner      /
      Case Manager and Deputy Clerk
      (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-10897.MURPHY.MotionToDismissLackOfPersonalJurisdiction.MAZ.RHC.2.docx